## OSBURN *v.* THE PLANTERS BANK OF MISSISSIPPI.

Where an injunction, obtained by a party claiming to be the owner of certain slaves against an order of seizure and sale, has been dissolved, no appeal being taken from the judgment; and, on the removal of the slaves to another parish, and their seizure under a *fi. fa.* issued from the court by which the injunction was dissolved, the same party obtains a second injunction, claiming to be their owner and relying on the title held by her at the time of the first injunction, the second injunction will be dissolved, with damages; and irregularities in the order of seizure and sale, not urged on the trial of the first case, will not be noticed.

APPEAL from the District Court of St. Mary, *Overton,* J. *Shannon,* for the appellant. *Maskell,* for the defendants. The matter at issue in this case is *res judicata.* C. C. 2265. 19 La. 323–328. 10 Rob. 361.

The judgment of the court was pronounced by

SLIDELL, J. In the year 1842, the Planters' Bank obtained, in the District Court for the parish of Madison, a decree against *Ozias Osburn,* the husband of the present plaintiff, whereby a judgment theretofore rendered in Mississippi, in favor of the bank against *Ozias Osburn,* was adjudged executory in this State, and a writ of seizure and sale was ordered to issue; and it was further ordered that certain slaves, among which were comprised those now in controversy, should be seized and sold as the property of *Osburn.* This judgment of the District Court of Madison was thereupon recorded in the mortgage office of that parish, and the slaves were seized. *Mary Osburn* then, by the agency of her husband, brought suit by injunction, alleging that she was the true owner of the slaves so seized. She prayed that the seizure be set aside, the slaves delivered up to her as her property, and that the injunction obtained be made perpetual. *Osburn* made a personal appearance in the proceedings, but did not contest their regularity, nor his indebtedness to the bank. Upon the trial of the injunction suit, the court, by a final judgment, sustained the injunction and the title of *Mary Osburn* as to four of the slaves so seized; but dissolved the injunction as to the residue, which remained judicially sequestered.

By some means these slaves were carried to the parish of St. Mary. The plaintiffs in execution obtained an *alias,* seized the slaves in that parish, and thereupon *Mary Osburn* brought the present suit, in which she again restrains the sale by injunction, and asks to be recognised as the owner of the slaves. So far as the plaintiff relied on title existing at the institution of her first suit, the court below very properly dissolved the injunction, with damages. This was an unlawful effort to renew a litigation, which the final decree already stated had effectually barred.

Much has been said in argument, in support of allegations in the petition charging irregularities and errors in the proceedings upon which the decree rendering the judgment executory was obtained. We do not notice them, be-

cause *Osburn*, the defendant in those proceedings, submitted to them without appeal; the present plaintiff made no complaint on that score in her first suit, and cannot revive such questions now.

The pretended title set up under a deed of donation from the plaintiff's brother, in 1844, is worthless, as against this judgment creditor, as *Osburn*, it seems, went into bankruptcy, in Mississippi, in January, 1843. In the schedule of his property he enumerates the slaves in question, with but one exception, as belonging to him. He declares in his schedule that the slaves are in Louisiana, and have been levied upon by virtue of an order of seizure and sale issued on a judgment in favor of the Planters' Bank against him and others, and are beyond his control. The assignee never had possession of, and did not pretend to sell, the slaves; but advertised and sold *the interest* of *Ozias Osburn* in them, which was struck off to *Dean*, the brother-in-law of *Mrs. Osburn*, for thirty dollars, in 1844, and *Dean* then made a donation of them to the plaintiff, his sister. *Dean* was aware of the existence of the suit in Madison, for he had been examined as a witness for his sister in that cause. It is idle to contend that the privilege and mortgage acquired before the bankruptcy by the seizure and possession of the sheriff and registry of judgment, was divested by this mere deed, made by the assignee *virtute officii*, and for which not even an order of the bankrupt court is shown. The deed itself did not purport to convey an absolute title, but only *Osburn's* interest.	*Judgment affirmed.*